IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HASAAN BOYER, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-834-LPS |
| | : | |
| KOLAWOLE AKINBAYO, Warden, and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

## **MEMORANDUM OPINION**

Hasaan Boyer. *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

November 6, 2018
Wilmington, Delaware

*[signature]*
STARK, U.S. District Judge:

I.  **INTRODUCTION**

Presently pending before the Court is Petitioner Hasaan Boyer's ("Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 2) The State filed an Answer in opposition (D.I. 12), to which Petitioner filed a Reply (D.I. 17). For the reasons discussed, the Court will dismiss the Petition.

II. **BACKGROUND**

Petitioner was arrested on January 28, 2014 and subsequently charged by information with a single count of dealing heroin. (D.I. 12 at 1) On February 11, 2014, Petitioner pled guilty to the charge, and the Superior Court immediately sentenced him to three years at Level V incarceration, suspended for 18 months of Level II probation. Petitioner did not appeal his sentence or conviction. (*Id*).

In April 2014, Petitioner violated the terms of his probation by being arrested on new charges. (D.I. 12 at 1) On June 4, 2014, the Superior Court sentenced Petitioner on his violation to three years at Level V, suspended for three years at Level IV supervision, suspended in turn after six months, for two years of Level III probation. (D.I. 12 at 1-2)

On April 30, 2014, Petitioner, through the Office of the Public Defender for the State of Delaware ("OPD"), filed a timely motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 12 at 2) Petitioner's Rule 61 motion sought to vacate his conviction based on an allegation of misconduct at the Office of the Chief Medical Examiner ("OCME"). Petitioner's Rule 61 motion was one of 112 Rule 61 motions seeking relief on the basis of the same OCME misconduct. By May 2014, the OPD had filed more than 560 Rule 61 motions essentially asserting the same argument on behalf of different defendants. More than

1

100 additional Rule 61 motions were filed in June 2014. According to Delaware Department of Justice ("DOJ") records, the OPD filed a total of 586 OCME Rule 61 motions in New Castle County between 2014 and 2017. The vast majority of the cases involved convictions by guilty plea. (*Id*).

DOJ staff began cataloging the filings and researching specific case information. (D.I. 12 at 2) Court personnel were also faced with the task of entering the motions into the appropriate case dockets and filing the papers in the correct files. In order to try and streamline the process, the state courts developed a plan of action whereby the identical motions (e.g., motions to dismiss, to compel, or for a new trial) were assigned to one Superior Court judge in each County. *Id*. In addition, the New Castle County Superior Court Judge assigned to handle the OCME postconviction cases was also assigned to conduct pre-trial evidentiary hearings in three active criminal cases. (D.I. 12 at 2-3) Those hearings took place in August 2014 and culminated in a written Opinion dated November 17, 2014. *See State v. Irwin*, 2014 WL 6734821 (Del. Super. Ct. Nov. 17, 2014). (D.I. 12 at 3)

After the Superior Court issued its November 2014 decision, the OPD began filing supplements to its original Rule 61 motions. (D.I. 12 at 3) In Sussex County, the assigned Superior Court Judge issued an order to show cause to the OPD in more than 70 guilty plea cases in which the OPD had filed postconviction motions based on OCME issues. That court conducted a hearing on December 2, 2014. At the hearing, the OPD did not object to the dismissal of 21 of the 74 cases because "either there was no actual drug offense that involved the medical examiner's office needing to be involved, or they were misdemeanors and there was a discharge, or they are felonies with a discharge where they have quite a criminal history." (D.I. 12-1 at 12) The Superior Court had previously dismissed approximately 60 OCME postconviction motions that had been

2

inappropriately filed. The Superior Court specifically noted that in Sussex County, more than 80 cases had been eliminated. In fact, the Superior Court Judge expressed frustration that "the first 60-some included cases that were nol-prossed, included cases that weren't even drug cases." (D.I. 12 at 3) Thereafter, the Superior Court proceeded to address each remaining case separately, ultimately denying relief in a written order dated December 3, 2014. (D.I. 12 at 3) The Delaware Supreme Court affirmed the Superior Court's judgment in a reported opinion dated October 12, 2015. *See Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

Petitioner supplemented his Rule 61 motion more than a dozen times between November 18, 2014 and April 26, 2017. (D.I. 12 at 3-4) During that time, he sought to estop the State from arguing that he could not withdraw his guilty plea because he had admitted committing a drug offense, and asked for alternative forms of relief and discovery in view of the Delaware Supreme Court's decision in *Aricidiacono*. (*Id.* at 4)

Due to the higher volume of cases in New Castle County, the assigned OCME Judge asked the parties for a roadmap to help move through the cases. (D.I. 12 at 4) The OPD, in January 2016, proffered 14 categories of cases to be decided. (D.I. 11-1 at 26-27) Because the DOJ believed that the cases could all be resolved in light of the Delaware Supreme Court's decision in *Arcidiacono* and its progeny, or based on the procedural bars of Superior Court Criminal Rule 61, the DOJ conveyed that the OPD was in the best position to select the specific cases that could act as vehicles for the OPD claims. (D.I. 11-1 at 31-32) In October 2016, the OPD sent a list of nine cases selected to be the basis of the litigation. (D.I. 11-1 at 72-73) The Superior Court conducted an office conference on January 12, 2017, at which time that Court directed the DOJ to respond to the claims in eight specific cases selected by the OPD. (D.I. 11-1 at 34-63) The Superior Court gave the DOJ a due date of February 28, 2017. (*Id.* at 56) The DOJ met the deadline and, on March 17,

3

2017, the Superior Court noted that the cases were ripe for decision without an evidentiary hearing. (D.I. 12-2 at 1-2) The OPD filed a reply that same day, adding additional argument. (D.I. 12-3 at 1-22) On May 11, 2017, the Superior Court issued a Memorandum Opinion addressing the eight cases selected by the OPD, denying relief. *See State v. Miller*, 2017 WL 1969780 (Del. Super. Ct. May 11, 2017).

On May 25, 2017, the Superior Court denied as meritless Petitioner's Rule 61 motion, based on his guilty plea and "the reasons set forth in the decisions issued by this Court in *State v. Irwin*, 2014 WL 6734821 (Del. Super. Ct. Nov. 17, 2014) and *State v. Miller*, 2017 WL 1969780 (Del. Super. Ct. May 11, 2017) and the Delaware Supreme Court in *Brown v. State*, 108 A.3d 1201 (Del. 2015) and *Aricidiacono v. State*, 125 A.3d 677 (Del. 2015)." (D.I. 15-17 at 2) Petitioner did not appeal that decision. Instead, he filed the instant Petition for federal habeas relief on June 27, 2017. (D.I. 2 at 4)

## III. GOVERNING LEGAL PRINCIPLES

### A. Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by fairly presenting all claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 1989).

A petitioner may be excused from exhausting state remedies when there is either an absence of an available State corrective process or the existence of circumstances, such as futility or inordinate delay, that render such processes ineffective. *See* 28 U.S.C. § 2254(b)(1)(B); *Duckworth v. Serrano*, 454 U.S. 1 (1981). For instance, if state procedural rules bar a petitioner from seeking further relief in state courts, "the exhaustion requirement is satisfied because there is an absence of available State corrective process." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is technically exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). A federal court cannot consider the merits of procedurally defaulted claims unless the

petitioner establishes cause and prejudice, or a fundamental miscarriage of justice to excuse the default. *See Lines*, 208 F.3d at 160.

Situations falling within the "ineffective corrective process" exception to the exhaustion requirement include those instances when "(1) the state corrective process is so deficient as to render any effort to obtain relief futile []; (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner []; or (3) 'inordinate delay' in state proceedings has rendered state remedies ineffective." *Kozak v. Pennsylvania*, 2012 WL 4895519, at *4 (M.D. Pa. Oct 15, 2012). When a failure to exhaust is excused due to an ineffective corrective process, the court may review a claim on its merits without engaging in the procedural default analysis. *See, e.g., Lee v. Strickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Woodruff v. Williams*, 2016 WL 6124270, at *1 (E.D. Pa. Oct. 19, 2016).

## IV. DISCUSSION

In his sole Claim for relief, Petitioner contends that his guilty plea should be deemed involuntary under *Brady v. United States*, 397 U.S. 742 (1970), because the State failed to disclose the OCME misconduct prior to his entry of a guilty plea. (D.I. 11 at 1) Petitioner acknowledges that he did not exhaust state remedies for this Claim due to his failure to appeal the denial of his Rule 61 motion to the Delaware Supreme Court. However, he argues that the Court should excuse his failure to exhaust for the following reasons: (1) exhausting state remedies by appealing the Superior Court's Rule 61 decision would have been futile because of the Superior Court's inordinate delay in adjudicating his Rule 61 motion ("inordinate delay" excuse); and (2) appealing the denial of his Rule 61 motion to the Delaware Supreme Court would have been futile because that court has rejected identical claims based upon the OCME misconduct in other cases for postconviction relief ("futility on the merits" excuse). The State contends that Petitioner's failure to exhaust should not be

6

excused for either reason and, since state criminal procedural rules preclude him from returning to the state courts for further review, the Claim is now technically exhausted but procedurally defaulted. Given Petitioner's failure to provide any reason to excuse the default, and the absence of a miscarriage of justice, the State asserts that the Court should deny the Claim as procedurally barred from habeas review.

### A. Exhaustion

#### 1. Inordinate Delay

"[I]nexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable," thereby warranting excusing the exhaustion requirement. *Story*, 26 F.3d at 405. "The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required." *Lee*, 357 F.3d at 341.

Neither the United States Supreme Court nor the Third Circuit has defined the specific amount of time that constitutes inordinate delay in a petitioner's post-conviction proceedings. As explained by the Third Circuit,

> [w]e stated in *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. *Id.* This, we found, excused the petitioner's failure to exhaust his state court remedies. *Id.* at 356. The thirty-three month delay in *Wojtczak* remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

*Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (refusing to excuse exhaustion in the face of 27 month delay); *see also Lee*, 357 F.3d at 343-44 (excusing exhaustion after eight year delay); *Coss v. Lackawanna County Dist. Att'y*, 204 F.3d 453, 460 (3d Cir. 2000) (en banc) (excusing exhaustion after

7

seven year delay), *rev'd on other grounds*, 532 U.S. 394 (2001); *Story*, 26 F.3d 402, 406 (3d Cir. 1994) (excusing exhaustion after nine year delay). Generally, courts in the Third Circuit have excused a petitioner's failure to exhaust state remedies where the following three factors are present: (1) the delays in the state court proceedings have amounted to three, five, eleven, or twelve years;[1] (2) no meaningful action towards resolution has been taken in the state court; and (3) the delay was not attributable to the petitioner. *See Simmons v. Garman*, 2017 WL 2222526, at *3 (E.D. Pa. Feb. 14, 2017).

Federal courts consider the degree of progress made by the state courts when determining whether a delay is inordinate. *See Lee*, 357 F.3d at 342. In cases in which courts have excused exhaustion due to an inordinate delay, the delay in petitioners' state post-conviction proceedings was still ongoing at the time of federal habeas review. *See Wojtczak*, 800 F.2d at 354 (Wojtczak's state postconviction proceeding had been pending for 33 months and had not been resolved when he filed his habeas petition); *c.f. Cristin*, 281 F.3d at 411 (concluding that 33 month delay did not excuse exhaustion under inordinate delay exception as state court ruled on Cristin's state post-conviction petition one week after he filed his federal habeas petition); *Wallace v. Dragovich*, 143 F. App'x 413, 418 (3d Cir. 2005) (finding that petitioner's failure to exhaust was not excusable on basis of inordinate delay, where previously stalled state habeas proceeding had resumed). The Court has not identified any cases holding that a petitioner's failure to exhaust can be excused on the basis of a delay in a state post-conviction proceeding when that delay has already ended. *See, e.g., Vreeland v. Davis*, 543 F. App'x 739, 741-42 (10th Cir. 2013).

---

[1] *See Story*, 26 F.3d at 405-06 (citing cases).

Petitioner contends that his failure to exhaust should be excused because the thirty-six month span between the filing of Petitioner's Rule 61 motion and the Superior Court's adjudication of that motion constitutes inordinate delay. The Court disagrees. Although the Superior Court took thirty-six months to rule on Petitioner's Rule 61 motion, Petitioner's post-conviction proceeding was not in a state of suspended animation when he filed the instant Petition. The Superior Court ruled on his Rule 61 motion on May 25, 2017, and Petitioner did not file an appeal of that decision in the Delaware Supreme Court. In fact, Petitioner admits he purposefully decided to forego a post-conviction appeal and proceed immediately with a federal habeas petition, because he feared a Rule 61 appeal might have resulted in a lengthier post-conviction process.

Petitioner's mistrust of the Delaware Supreme Court's ability to decide his post-conviction appeal within a certain time-frame is insufficient to excuse him from exhausting state court remedies for his Claim.[2] *See, e.g.*, *White v. Kelley*, 2018 WL 4839230, at *1 (E.D. Ark. Aug. 23, 2018) (noting that White's subjective fears that Arkansas Supreme Court would prolong his hearing past his unlawful discharge date did not allow him "to bypass the exhaustion requirement in anticipation that his efforts in state court may be futile"); *Staton v. Brighhaupt*, 2012 WL 1144035, at *4 (D. Conn. April 4, 2012) (rejecting Staton's argument that "he should not be required to *attempt* to exhaust his other, non-exhausted state court remedies because a state habeas proceeding *might* result in a lengthy process") (emphasis in original). Thus, Petitioner's failure to exhaust is not excused on the ground

---

[2]If Petitioner had filed a post-conviction appeal, and that appeal had been pending for an inordinately long time, then Petitioner could perhaps have agreed that he should be excused from exhausting his state court remedies for the claims asserted, and not yet resolved, on post-conviction appeal. But that is not the situation presented here.

of inordinate delay, since his failure to complete the exhaustion of state court remedies was not due to an ongoing stalled or delayed post-conviction proceeding.

### 2. Futility on the Merits

Petitioner also asks the Court to excuse his failure to exhaust on the ground that it would have been futile to present his Claim to the Delaware Supreme Court, because that court has already considered and rejected numerous identical or similar OCME misconduct claims. In *Engle v. Isaac*, the Supreme Court held that futility on the merits does not constitute cause for a procedurally defaulted claim. 456 U.S. 107, 130 (1982) (petitioner "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim"). The Third Circuit has applied *Engle*'s reasoning in the context of exhaustion, opining that "likely futility on the merits [] in state court of a petitioner's habeas claim does not render that claim exhausted within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition." *Parker v. Kelchner*, 429 F.3d 58, 64 (3d Cir. 2005). According to the Third Circuit, "[a]llowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of a critical opportunity to examine and refine their constitutional jurisprudence." *Id.* Thus, the Court concludes that Petitioner's failure to exhaust state remedies is not excused on the ground of likely futility on the merits.

### B. Procedural Default

Having determined that Petitioner's intentional failure to appeal the denial of his Rule 61 motion is not excusable, Petitioner's habeas Claim remains unexhausted. At this juncture, any attempt by Petitioner to exhaust state remedies by presenting the Claim in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as repetitive

under Rule 61(i)(2). Consequently, the Court must treat the Claim as technically exhausted but procedurally defaulted, which means that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review. *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

To the extent Petitioner's futility argument should also be viewed as an attempt to establish cause for his procedural default, the argument is unavailing. In order to establish cause, Petitioner must demonstrate that an external factor prevented him from appealing the denial of his Rule 61 motion. However, nothing prevented Petitioner from filing a post-conviction appeal -- he simply

elected not to do so. Petitioner's belief that it would have been futile to present his Claim to the Delaware Supreme Court because of that court's denial of similar arguments does not constitute cause for his procedural default. *See Engle*, 456 U.S. at 130.

In the absence of cause, the Court does not need to address prejudice. The Court further concludes that the miscarriage of justice exception does not excuse Petitioner's procedural default. Although Petitioner contends that knowing about the OCME misconduct would have affected his decision-making process regarding the State's plea offer and would have been a "factor in favor of going to trial" -- that, "[a]t the very least, [he] would have waited to see if the State would make a better offer" (D.I. 15-12)-- neither of these assertions constitutes new reliable evidence of his actual innocence. Accordingly, the Court will deny the instant Petition as procedurally barred from federal habeas review.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.